# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JILLONE MARIE WALKER, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C13-3021-MWB <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff Jillone Marie Walker seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Walker contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period of time. For the reasons that follow, I recommend that the Commissioner's decision be reversed and remanded for further proceedings.

## I. BACKGROUND

Walker was born in 1970 and has a GED. AR 258, 264. She has no past relevant work. AR 334. Walker protectively filed for SSI on March 22, 2010, alleging disability beginning on March 19, 2009,[1] due to bipolar disorder and migraines. AR 258, 263. Her claims were denied initially and on reconsideration. AR 132-33. Walker requested

---

[1] Because this is an SSI application, benefits may only be awarded as of the date the application was filed. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (acknowledging that SSI benefits are not payable for a period prior to the application).

a hearing before an Administrative Law Judge (ALJ). AR 151-52. After several continuances at Walker's request, ALJ David Buell held a hearing via video conference on June 11, 2012, during which Walker and a vocational expert (VE) testified. AR 57-92.

On June 28, 2012, the ALJ issued a decision finding Walker not disabled since March 22, 2010. AR 12-26. Walker sought review by the Appeals Council, which denied review on February 12, 2013. AR 8-11. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

After obtaining an extension from the Appeals Council, Walker filed a complaint in this court on April 16, 2013, seeking review of the ALJ's decision. AR 2, Doc. No. 3. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the

claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that

the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since March 22, 2010, the application date (20 CFR 416.971 *et seq.*).

(2) The claimant has the following severe impairments: mood disorder and recurrent headaches (20 CFR 416.920(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

(4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to simple routine repetitive work with no close attention to detail or use of independent judgment; she would require job tasks that can be done without cooperation or in coordination with others such that she can be in close proximity of others but the tasks need to be done independently from others; and she can have only occasional and superficial contact with the public and coworkers such that the work is done independently while alone.

(5) The claimant has no past relevant work (20 CFR 416.965).

5

(6) The claimant was born on June 14, 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

(7) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

(8) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(10) The claimant has not been under a disability, as defined in the Social Security Act, since March 22, 2010, the date the application was filed (20 CFR 416.920(g)).

AR 18-25.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

### A. *Arguments of The Parties*

Walker argues the ALJ's decision is not supported by substantial evidence because he failed to account for her migraines in the RFC even though he found they were a severe impairment. She alleges the ALJ did not fully consider medical evidence related to her migraines that supports her allegations. She also argues the ALJ did not provide good reasons for discrediting her allegations related to her migraines.

The Commissioner argues the ALJ adequately considered Walker's migraines and his failure to cite specific evidence does not mean it was not considered. She contends the ALJ's reasons for discrediting the limitations alleged by Walker are supported by substantial evidence in the record as a whole.

### B. *Summary of the Medical Evidence Related to Walker's Migraines*

The medical evidence indicates that Walker first sought treatment for migraines on August 4, 2009. AR 360. Her headache at that time had lasted a day and she also felt nauseous. *Id*. She stated she had similar episodes over the past couple years, but only used over-the-counter medication. *Id*. She was given injections and prescribed medication to try at the onset of another headache. *Id*. On December 18, 2009, she sought treatment for a migraine which started the day before. AR 352. She informed her physician that the headaches were occurring about three times per week and lasting four hours. *Id*. She had gone to the emergency room for a shot and wanted to know if there was anything else she could do because they were happening more often. *Id*.

Walker visited her physician again on March 2, 2010, after experiencing a headache that lasted two to three days. AR 440. The doctor asked why she was not using sumatriptan, which had been prescribed for her migraines. She stated she was concerned about taking it with another one of her prescription drugs. The doctor assured her it was fine to take the medications together and she was instructed to take sumatriptan

8

for future migraines. AR 441. If she needed to use it more than twice a week, the doctor stated they would need to try a different medication. *Id.*

According to the record, the next time Walker sought treatment for her migraines was on February 7, 2011. AR 433. She stated she had been experiencing migraines about 10 days a month and wanted stronger medication. *Id.* She also said she had sought treatment for her migraines three times since the previous autumn, but there are no treatment notes in the record documenting those visits. Walker reported that the current migraine had started the day before and she felt nauseous. *Id.* The doctor prescribed a new medication for her to try. AR 434. Walker sought treatment again on February 17, 2011, stating her migraine had lasted four days and the medication was not helping. AR 567. She requested an appointment with a neurologist.

On March 21, 2011, a CT scan was performed which revealed no abnormalities of the brain that could be related to Walker's migraines. AR 446, 577-78. On July 21, 2011, Walker reported to the emergency room with a migraine that had started the day before. AR 465. Her medication was not helping and she experienced nausea and sensitivity to light. *Id.* She was given injections and released. AR 471. Walker reported to the emergency room again on July 28, 2011, complaining of a migraine that had started the day before. AR 473. She was again given injections and released. AR 474, 479.

On November 27, 2011, Walker reported to the emergency room with a migraine that had lasted a day with symptoms of nausea and light sensitivity. AR 485. She was given injections and discharged. AR 488-89. On March 26, 2012, Walker sought treatment for a migraine that had lasted five days. AR 558. She had been taking her medication twice a day since the migraine began except for the day before. *Id.* She was treated with injections. AR 559. On April 16, 2012, Walker reported she had a migraine that had lasted for three days. AR 551. She had taken all of her medication, but it did not provide any relief. She was again treated with injections. AR 552. A similar event happened on April 30, 2012. AR 549. On May 25, 2012, Walker reported she had a migraine for the past three days and had taken her medication the past two days. AR

9

547. One of her medications was increased for preventative control of her headaches. AR 548.

## C. ALJ's Analysis of Walker's Migraines

At Step Two, the ALJ found Walker's severe impairments were mood disorder and recurrent headaches. He stated, "These impairments are established by the medical evidence and are 'severe' within the meaning of the Regulations because they cause significant limitation in the claimant's ability to perform basic work activities." AR 18. In analyzing Walker's RFC with regard to her migraines, his discussion of the medical evidence was brief. He stated, "From her application date through May 2012, the claimant was seen at a variety of medical clinics to include Trinity Regional Center and Trimark Family Practice. These visits involved general complaints ranging from back pain following a fall and right shoulder sprain to diagnosis and treatment of migraines." AR 20. He noted that she took medication for migraines. *Id.* The ALJ also considered the opinion of Dr. Aaron Quinn, Ph.D., a state agency psychological consultant, who remarked that Walker could adequately complete activities of daily living except when she had a migraine. AR 22. Dr. Quinn's opinion primarily addressed Walker's mental impairment and the ALJ gave it significant weight. *Id.* He later stated that he had given all the state agency consultants' opinions "great weight."[2] AR 23.

The ALJ then considered Walker's credibility. He noted that she attended college after her alleged onset date and stated that although disability and going to school are not necessarily mutually exclusive, her ability to attend classes suggested that her alleged symptoms and limitations may have been overstated. *Id.* He noted that Walker alleged during the hearing that she would be absent half the time of a full time job due to her migraines. The ALJ found this was inconsistent with her ability to raise her young

---

[2] The ALJ did not separately discuss the opinions of the state agency consultants who evaluated Walker's physical impairments. They concluded her migraines would only cause minimal limitations and considered them to be non-severe. AR 381, 427.

daughter and the medical evidence which did not show headaches of this frequency. *Id*. Finally, he relied on Walker's testimony that she would be able to work again as a flower arranger "if it was air-conditioned." *Id*. The ALJ reasoned that "[i]f she were actually having severe headaches that would prevent work half the time, she would not have concluded that she would be able to work so long as the workspace was air-conditioned." *Id*.

The ALJ also discredited Walker generally based on her inconsistent statements regarding marijuana use. She testified it had been years since she last used marijuana, but the record revealed that she was using every day in August 2010. She also told her doctor in December 2010 that she felt better since resuming her marijuana use. *Id*. The ALJ concluded that Walker was not a reliable reporter of her functional limits and gave her testimony little weight. AR 24.

### D. *Is ALJ's Analysis Supported by Substantial Evidence?*

Walker raises the issue of whether the ALJ is required to provide limitations in the RFC at Step Four for an impairment he identified as severe at Step Two. The regulations define a severe impairment as one that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of Step Two. *Page*, 484 F.3d at 1043. It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an

11

onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted). It has been described as a "de minimis" test to eliminate groundless claims. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

At Step Four, the ALJ must consider the combined effects of both severe and nonsevere medically determinable impairments in calculating the claimant's RFC. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)). RFC is defined as "the most [a claimant] can still do despite" his or her "physical or mental limitations." 20 C.F.R. § 416.945(a). It has been described as a "function-by-function" assessment based on all the relevant evidence of an individual's ability to do work-related activities. SSR 96-8p, 1996 WL 374184 (July 2, 1996).

A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four. *See e.g., Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532 (D. Md. Jan. 31, 2012) ("It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work.") (citing cases). However, because RFC is a medical question, the ALJ's assessment must be supported by "some medical evidence" of the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). "It is the ALJ's responsibility to determine [the] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Page*, 484 F.3d at 1043).

*Walker's Description of Her Limitations.* Walker testified that migraine headaches would cause her to be absent from work about half the time of a full-time job. The ALJ discredited this limitation and Walker's general claim of disability for several reasons. First he noted that her ability to attend school was inconsistent with a claim of disability, whether related to her mental impairment or her migraines. There are a few doctors' notes in the record documenting Walker's absences from school in March through May 2012. AR 542-45. However, these notes are mostly related to a stressful event Walker experienced during that time. AR 541-45, 553. Her primary care physician noted she was experiencing a "grief reaction with physical manifestations," prescribed anti-anxiety medication and encouraged her to speak with a counselor at the time. AR 554. There are no other indications in the record that Walker missed school due to her migraines. The ALJ provided a good reason supported by substantial evidence for discrediting Walker's allegations of disabling limitations.

The ALJ found Walker's allegation that she would be absent from work half the time of a full-time job was also inconsistent with her ability to take care of her young daughter and was not supported by the medical record. Caring for children has been recognized as an activity that is inconsistent with a claim of disability. *See McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (finding that claimant's reports of gardening, driving and helping his children get ready for school was inconsistent with reports of disabling pain). Walker testified that she is still able to go outside to watch her daughter play in the yard and pick her daughter up from school when she has a migraine. AR 75-76. This is a good reason for discrediting the severity of Walker's migraines.

Walker argues the medical evidence supports her allegation of only being able to work half the time of a full-time job and it was improper for the ALJ to discredit her based on the lack of medical records documenting every migraine. Doc. No. 14 (citing *Cox v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998)) ("The ALJ cannot rely on the absence of later records dealing with the same subject as an indication that the medical condition has resolved."). The medical evidence demonstrates Walker sought treatment on 11

13

separate occasions in 2011 and 2012 for her migraines and each time the migraine had lasted for at least one day. The ALJ is, therefore, correct that the medical evidence does not support the frequency of migraines alleged by Walker. However, I also agree with Walker that the medical evidence cannot be expected to document every single migraine Walker experienced. In any event, this reason for discrediting Walker is not determinative, as a lack of objective medical evidence cannot be the sole reason for discounting a claimant's subjective complaints. *See Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) ("[T]he ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence.").

The ALJ also discredited Walker based on her testimony that she would be able to work at her past job as a flower arranger if it was air-conditioned. AR 23. The ALJ reasoned that if her migraines were as frequent as she alleged, Walker would not have indicated she could go back to work. This is another good reason for discrediting the severity of migraines alleged by Walker.

Finally, the ALJ noted Walker had been dishonest about her marijuana use. She testified it had been years since she last used marijuana, but the record since her alleged onset date revealed that she was using every day in August 2010. She also told her doctor in December 2010 that she felt better since resuming her marijuana use. *Id*. This is also a good reason for generally discrediting Walker's subjective allegations that is supported by the record. In short, the ALJ provided good reasons supported by substantial evidence for discrediting Walker's allegations related to her migraines.

*Medical Evidence.* While it was not error for the ALJ to find that Walker's migraine-related limitations are not as severe as she alleges, that finding alone does not answer the question of "How severe are they?" The ALJ made a Step Five determination that Walker could perform other work available in the national economy and was therefore not disabled. At Step Five, it is the Commissioner's burden to prove that the claimant has the RFC to do other kinds of work and that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citing *Nevland v.*

*Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). This usually requires medical evidence. In *Nevland*, for example, the court noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Nevland*, 204 F.3d at 858. The court then stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir.1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir.1974)."

*Id*. [emphasis in original].

Similarly here, there is simply no medical evidence as to how Walker's migraines affect her ability to function. There are opinions from state agency consultants, but they did not examine Walker. Moreover, the ALJ did not adopt their findings concerning the effects of Walker's migraines. The consultants found that Walker experiences limitations in her daily activities on the days she has headaches but concluded that migraines were a non-severe impairment because they did not have more than a minimal effect on her ability to perform work-related activities. AR 381, 427. The ALJ stated that he had considered the opinions of all the state agency consultants and gave their opinions "great weight." AR 23. Nonetheless, he departed from their opinions in finding that Walker's

15

recurrent headaches do constitute a severe impairment "because they cause significant limitation in [her] ability to perform basic work activities." AR 18.

And, in fact, the evidence does suggest there may be some work-related limitations associated with Walker's migraines. As discussed above, several treatment notes document Walker's visits to the doctor or emergency room to receive treatment for migraines lasting more than a day. The state agency consultants found that Walker cannot adequately perform activities of daily living while she is experiencing a migraine. AR 22, 381, 398, 427. Thus, while it appears that migraine headaches do cause some work-related limitations, the question remains: "What are they?"

The Commissioner points out the ALJ included limitations in the RFC concerning Walker's attention and concentration, which could be related to both of Walker's severe impairments. For example, Walker testified that she has difficulty communicating and focusing when she experiences a migraine. AR 80. Even if the Commissioner is correct, and the ALJ actually did include limitations based on migraine headaches, this does not cure the lack of medical evidence. Contrary to *Nevland*, the record contains no opinion from a treating or examining source as to how Walker's migraines affect her ability to perform work-related activities. Faced with this lack of evidence, the ALJ should have sought an opinion from Walker's treating physician or ordered a consultative examination to determine if there are work-related limitations associated with her migraines. *See Nevland*, 204 F.3d at 858 ("An administrative law judge may not draw upon his own inferences from medical reports."); *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (stating the ALJ is required to obtain additional evidence "if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). Thus, despite the fact that the ALJ is not required to provide limitations for all impairments identified as "severe" at Step Two, I find that the ALJ's analysis of Walker's migraines is not supported by substantial evidence in the record as a whole.

*E.	Reversal or Remand*

Walker argues that the ALJ's decision should be reversed, and benefits awarded, because the VE testified that if a person had to miss an entire workday or leave work early at least once a week, he or she could not sustain full-time competitive employment. AR 89.  This argument assumes that this is an appropriate limitation resulting from Walker's migraines.  As discussed above, however, there is no medical evidence suggesting what work-related limitations Walker's migraines might cause, such as whether she can perform any tasks while experiencing a migraine or how often she will be required to miss work because of migraines.  Like the ALJ's findings, the limitations provided in the hypothetical Walker relies upon are not supported by substantial evidence in the record.  I must recommend that this case be remanded for further proceedings.

## VI.	CONCLUSION AND RECOMMENDATION

For the reasons discussed above, I RESPECTFULLY RECOMMEND that the Commissioner's decision be **reversed** and **remanded** for further proceedings and that judgment be entered in favor of the plaintiff and against the defendant.

On remand, the ALJ must re-evaluate Walker's migraine/recurrent headaches impairment.  If he again finds it to be a severe impairment, he must obtain a medical opinion from a treating or examining source as to whether there are any work-related limitations associated with the impairment.  If so, the ALJ must incorporate those limitations into Walker's RFC.  The ALJ may then need to obtain additional VE testimony to determine if the revised RFC permits Walker to perform work that exists in significant numbers in the national economy.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of

the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 3rd day of April, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE